HERBERT V. CITY OF FOREST HILL

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-326-CV

ROBERT HERBERT APPELLANT

V.

CITY OF FOREST HILL, TEXAS APPELLEE

------------

FROM THE 67TH
 DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

Appellant  Robert Herbert, a former police chief of Appellee City of Forest Hill, Texas, sued Appellee for unlawful employment practices.
(footnote: 1)  Appellant alleged that Appellee discriminated against him when Appellee’s city manager decided to remove him from the position of police chief and return him to the position of sergeant.  He also claimed that he was retaliated against for complaining about his removal from the position as chief.  The trial court granted Appellee’s motion for summary judgment.  On appeal, Appellant challenges the summary judgment in Appellee’s favor.  Because we hold that there is no evidence in the summary judgment record of a pretext for discrimination and no evidence that Appellee’s actions were causally related to Appellant’s exercise of a protected activity, we affirm the trial court’s judgment.

I.  Facts and Procedural History

Appellant is a black male who has been employed with Appellee’s police force since 1986.  In 1994, after serving as sergeant for approximately two years, he was appointed police chief.  Eight months later, David Vestal, a white male, became Appellee’s city manager.  
As city manager, he had hiring and firing power over Appellant.  Vestal removed Appellant from the position of police chief on August 21, 1998, and returned him to his former rank as sergeant
.  After Appellant returned to the position of sergeant, he was denied positions in an auto theft task force, as a field training officer
, and on a tactical team.  

Vestal appointed Coy Martin, a white male, to serve as interim chief until Appellant was replaced.  Martin worked for Appellee for only one week as an unpaid volunteer before removing himself from this office due to health considerations.  Martin was temporarily replaced by interim chief Gary Fowler, also a white male.  Appellant’s 
permanent replacement was Samith Hill, a black male with twenty-seven years of law enforcement experience who had most recently served as deputy chief of the City of Fort Worth.

Appellant filed a Charge of Discrimination against Appellee with the Equal Employment Opportunity Commission (EEOC) on August 28, 1998, and later added allegations of retaliation.  On March 10, 1999, Appellant received a Dismissal and Notice of Rights from the EEOC, which stated that the EEOC was “unable to conclude that the information obtained establishe[d] violations of the statutes.”  Appellant then filed suit in district court. 

Appellant claimed that he performed his duties as required and received high performance ratings from Vestal.  However, Vestal claimed that during the last eight months of Appellant’s tenure as chief, several officer complaints and his dissatisfaction about Appellant’s performance led to Vestal’s decision to remove Appellant from the position.  For instance, a sergeant and another officer complained about an abusive rebuke the sergeant received from Appellant in the presence of other personnel.  A detective from an independent law enforcement agency investigated the incident and sustained the complaint allegations, also noting Appellant’s lack of cooperation by refusing to meet with him.
  
In addition, Appellant failed to complete his department’s budget proposal on time
.  Appellant claimed that because the submission deadlines were lax under Vestal’s supervision, his failure to timely file the proposals was actually Vestal’s fault.  Vestal also asserted that Appellant failed to adequately supervise the animal control office, responded unprofessionally to Vestal’s directive for a police property room audit, and did not decrease the high turnover rate in the department.  All of these facts led to Vestal’s decision to remove Appellant from the position of police chief.  
Vestal did not give Appellant a specific reason for this decision, claiming that he did not want to hamper Appellant’s advancement in the future.  Appellant claimed that Vestal’s decision was racially motivated.

Appellant also alleged that white employees were treated differently in disciplinary matters.  He asserted that Mike Duehring, a white director of public works, was treated more favorably than Appellant regarding complaints of sexual harassment filed against Duehring.  
Appellant further contended that the city council held him to different standards because of his race.

In addition, Appellant claimed that after he was returned to the sergeant position, he was retaliated against when Hill continuously denied him assignments and positions for which he was qualified.  He had requested and was denied assignments to positions in an auto theft task force and as a field training officer.  He also complained that he was required to train with a white police officer who had less experience than he did for the position of patrol officer and that Appellee failed to pay him “tactical pay.”  With regard to the auto theft task force,
 Hill responded that because of a manpower shortage, no officer was assigned to the force.  Therefore, Appellant had not been singled out for exclusion.  With regard to the field training duty, Hill responded that field training is traditionally performed by a person of lower rank than a sergeant so that a sergeant has more time to supervise.  
With regard to the patrol assignment, Hill responded that he assigned Appellant to duty which would make the best use of his rank and experience.  In addition, Hill asserted that Appellant had not been assigned to patrol for a number of years, the white officer at hand was the most qualified to train Appellant, and that the race of neither played a role in this selection.  Finally, with regard to the tactical pay allegation, Hill responded that Appellant was not paid this type of assignment pay because he was not assigned to the tactical team, as Hill put a hold an all tactical team assignments until he could assess the expertise and training of the team.

On June 21, 2004, Appellee filed a motion for summary judgment under both the no-evidence standard and the traditional standard.  On July 16, 2004, the court granted the motion without specifying the grounds.  Appellant filed a motion for new trial on August 13, 2004, which was denied by operation of law.  Appellant appealed the summary judgment on October 14, 2004.

On appeal, Appellant claims that the trial court erred by granting Appellee’s motion for summary judgment based on either the traditional summary judgment standard or the no-evidence summary judgment standard. 

II.  Standard of Review

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense.
(footnote: 2)  The motion must specifically state the elements for which there is no evidence.
(footnote: 3)  The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact.
(footnote: 4)
 We review the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered.
(footnote: 5)  If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper.
(footnote: 6)
 When a party moves for summary judgment under both rules 166a(c) and 166a(i), we will first review the trial court’s judgment under the standards of rule 166a(i).
(footnote: 7)  If Appellant failed to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether Appellee’s summary judgment proof satisfied the less stringent rule 166a(c) burden.
(footnote: 8) 

III.  Legal Analysis

A.  Discrimination

Under section 21.051 of the Texas Commission on Human Rights Act (TCHRA), an employer commits an unlawful employment practice if because of race the employer “fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment.”
(footnote: 9)  The Texas Legislature modeled chapter 21 of the Texas Labor Code after federal law for the express purpose of carrying out the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments.
(footnote: 10)  Consequently, when reviewing an issue in a proceeding brought under chapter 21, we may look not only to cases involving the state statute, but also to cases interpreting the analogous federal provisions.
(footnote: 11)
 In discrimination cases brought under the TCHRA, a prima facie case of discrimination is made by showing that the plaintiff (1) is within a protected group, (2) was adversely affected or suffered an adverse employment action, and (3) similarly situated nonprotected class members were not treated similarly.
(footnote: 12) 
 In addition, in order to prove causation, the plaintiff must establish that race “was a motivating factor for an employment practice, even if other factors also motivated the practice, unless race . . . is combined with objective job-related factors to attain diversity in the employer's work force.”
(footnote: 13) 

After the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate legitimate, nondiscriminatory reasons for any allegedly unequal treatment.
(footnote: 14)  After the employer articulates legitimate, nondiscriminatory reasons, the burden shifts back to the plaintiff to prove that the employer’s articulated reasons are a mere pretext for unlawful discrimination.
(footnote: 15)  Although the burden of production shifts, the burden of persuasion remains continuously with the plaintiff.
(footnote: 16)  

In its motion for summary judgment, Appellee asserted that there is no evidence that its articulated reasons for removing Appellant from his position as police chief were a mere pretext for unlawful discrimination.
   We agree.

Appellee asserted that 
Vestal’s decisions were based on his assessment of Appellant’s job performance.  Because Appellee produced a nondiscriminatory reason for removing Appellee from the chief position, we analyze whether there is any evidence of pretextual discrimination.  Proving “pretext for discrimination” requires the plaintiff to show both that the reason for the employer’s action was false and that discrimination was the real reason for the action.
(footnote: 17)  A plaintiff pursuing a claim under the TCHRA must also “show that discrimination was a motivating factor in an adverse employment decision.”
(footnote: 18)  “[A]n employee's own subjective belief of discrimination, no matter how genuine, cannot serve as the basis for judicial relief.”
(footnote: 19)  

Here, there is no evidence that race was a motivating factor.  There is no evidence that Vestal generally disliked blacks or that he ever made any racially-motivated statements.  Although Appellant argues the importance of Martin’s and Fowler’s status as white males, they were only temporary replacements.  Appellant’s permanent replacement is black.  
In addition, that Duehring
 was not removed from his position for the sexual harassment incident is not evidence of pretext.  More favorable treatment of a person outside a protected class can be used to show discrimination only if the circumstances are nearly identical.
(footnote: 20)  The Duehring incident was factually distinct from the one at hand, as it was based on allegations of sexual harassment rather than poor job performance.  In addition, Vestal alleged that Deuhring was otherwise efficient at his job, had a complaint-free administration of his department
, and had a generally professional demeanor.  There is no evidence that Duehring was otherwise negatively perceived regarding his job abilities, and Vestal claimed that he never lost confidence in Deuhring’s commitment or ability to do his job.

Moreover, even an incorrect belief that an employee’s performance is inadequate constitutes a legitimate, nondiscriminatory reason for an adverse employment action.
(footnote: 21)  Although Appellant claims that Vestal gave him a “glowing performance evaluation,” this evaluation was done on January 5, 1998, over seven months before Vestal’s decision to remove Appellant from the position of police chief.  As stated above, Appellee has cited many job-related reasons for losing confidence in Appellant.  Loss of confidence caused by an employee’s job performance has been held to be a legitimate nondiscriminatory reason.
(footnote: 22)  In addition, although an employee may show that proffered reasons for the employment action were a pretext for discrimination by establishing that the employer’s reasons are unworthy of credence,
(footnote: 23) Appellant has not done so.
  The court’s role in employment discrimination cases is not to second-guess every personnel decision.
(footnote: 24) 

We hold that Appellant has presented no evidence showing that Appellee’s proffered reasons for removing him as police chief and returning him to sergeant were false or that discrimination was the real reason for the action; therefore, the trial court did not err by granting summary judgment based on no-evidence grounds with regard to Appellant’s discrimination claim. 

B.  Retaliation

To establish a prima facie case of retaliation, a plaintiff must show that 1) he engaged in a protected activity, 2) an adverse employment action occurred, and 3) there was a causal connection between participation in the protected activity and the adverse employment decision.
(footnote: 25)  Protected activities are listed in 
Section 21.055 of the Texas Labor Code, and include 1) opposing a discriminatory practice, 2) making or filing a charge, 3) filing a complaint, or 4) testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing.
(footnote: 26)  
 A plaintiff asserting a retaliation claim must establish that, without his protected activity, the employer’s prohibited conduct would not have occurred when it did.
(footnote: 27)  That is, the plaintiff must establish a “but for” causal nexus between the protected activity and the employer's prohibited conduct.
(footnote: 28)  The plaintiff need not establish that the protected activity was the sole cause of the employer’s prohibited conduct.
(footnote: 29)  The burden then shifts in the same manner as it does with regard to discrimination claims.
(footnote: 30) 

In its motion for summary judgment, Appellee argued that Appellant had no evidence that any of the decisions made by Hill concerning tactical assignments, field training duty, and the auto theft task force were causally related to Appellant’s exercising a protected activity.  Without addressing whether these actions constitute adverse employment actions, we hold that there is no evidence that the activities were causally related to the exercise of protected activity by Appellant.

After being informed of the alleged discriminatory change in position, Appellant engaged in protected activity by opposing the reassignment and filing charges with the EEOC and this lawsuit.  However, he has offered no evidence that but for his having engaged in this protected activity, he would have received the desired assignments.  Although Appellant asserts that he was highly qualified, Appellee has asserted legitimate reasons for not placing Appellant in the positions.  Appellant simply alleges that the retaliations were racially-based.  This conclusory evidence does not show that the decisions were causally related to his engaging in a protected activity.   Thus, the trial court did not err by granting Appellee’s motion for summary judgment on no-evidence grounds with regard to Appellant’s retaliation claim
.  Because summary judgment was proper on the no-evidence grounds on both Appellant’s discrimination and retaliation claims, we do not address whether summary judgment was proper under traditional grounds.
(footnote: 31)
IV.  Conclusion

The trial court did not err by granting Appellee’s no-evidence motion for summary judgment.  Therefore, we overrule Appellant’s issues and affirm the trial court’s judgment.

LEE ANN DAUPHINOT

JUSTICE

PANEL A: CAYCE, C.J.; DAUPHINOT and MCCOY, JJ.

DELIVERED:  March 16, 2006

FOOTNOTES
1:
See 
T
ex. Lab. Code Ann. §
 21.051 (Vernon 1996).

2:
Tex. R. Civ. P.
 166a(i).

3:
Id.; Johnson v. Brewer & Pritchard, P.C., 
73 S.W.3d 193, 207 (Tex. 2002).

4:
See
 
Tex. R. Civ. P.
 166a(i) & cmt.; 
S.W. Elec. Power Co. v. Grant, 
73 S.W.3d 211, 215 (Tex. 2002).

5:
King Ranch, Inc. v. Chapman
, 118 S.W.3d 742, 751 (Tex. 2003), 
cert. denied
, 124 S. Ct. 2097 (2004); 
Johnson
, 73 S.W.3d at 197; 
Morgan v. Anthony
, 27 S.W.3d 928, 929 (Tex. 2000).

6:
Moore v. K Mart Corp.
, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied).

7: 
Ford Motor Co. v. Ridgway, 
135 S.W.3d 598, 600 (Tex. 2004).  

8:
Id.

9:
Tex. Lab. Code Ann.
 § 21.051(1); 
see Shear Cuts, Inc. v. Littlejohn, 
141 S.W.3d 264, 269 (Tex. App.—Fort Worth 2004, no pet.).

10:
S
ee
 
Tex. Lab. Code Ann.
 § 
21.001(1); 
Shear Cuts, 
141 S.W.3d at 269.

11:
See Caballero v. Cent. Power & Light Co.
, 858 S.W.2d 359, 361 (Tex. 1993); 
Shear Cuts, 
141 S.W.3d at 269.

12:
Shear Cuts, 
141 S.W.3d at 269-70.

13:
Tex. Lab. Code Ann.
 § 21.125(a) (Vernon Supp. 2005);
 Quantum Chem. Corp. v. Toennies
, 47 S.W.3d 473, 479-80 (Tex. 2001); 
Shear Cuts, 
141 S.W.3d at 270.

14:
McDonnell Douglas Corp. v. Green
, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973); 
Greathouse v. Alvin ISD, 
17 S.W.3d 419, 423 (Tex. App.—Houston [1st
 Dist.] 2000, pet. denied).
  This burden-shifting analysis is applied in discrimination cases that have not been fully tried on the merits.  
Wal-Mart Stores v. Canchola
, 121 S.W.3d 735, 739 (Tex. 2003).

15:
McDonnell Douglas
, 411 U.S. at 804, 93 S. Ct. at 1825; 
Greathouse, 
17 S.W.3d at 423.

16:
McDonnell Dougla
s, 411 U.S. at 803, 93 S. Ct. at 1825; 
Greathouse, 
17 S.W.3d at 423.

17:
St. Mary's Honor Ctr. v. Hicks
, 509 U.S. 502, 515, 113 S. Ct. 2742, 2752 (1993). 

18:
Quantum
, 47 S.W.3d at 482. 

19:
Winters v. Chubb & Son, Inc
., 132 S.W.3d 568, 576 (Tex. App.—Houston [14th
 Dist.] 2004, no pet.) (quoting 
 
Martin v. Kroger Co.
, 65 F. Supp. 2d 516, 553 (S.D. Tex. 1999), 
aff’d
, 224 F.3d 765 (5th
 Cir. 2000)). 

20:
See, e.g., Winters, 
132 S.W.3d at 578.

21:
Id.
 (citing 
Little v. Republic Ref. Co.
, 924 F.2d 93, 97 (5th Cir. 1991)).

22:
See Gold v. Exxon Corp
., 960 S.W.2d 378, 383 (Tex. App.— Houston [14th
 Dist.] 1998, no pet.). 

23:
Bowen v. El Paso Elec. Co.
, 49 S.W.3d 902, 909 (Tex. App.—El Paso 2001
, pet. denied).

24:
Martin, 
65 F. Supp. 2d at 553.

25:
Johnson v. Alcon Labs., Inc
., No. 2-03-011-CV, 2004 WL 456055, at *3 (Tex. App.—Fort Worth Mar. 11, 2004, no pet.) (mem. op.); 
Graves v. Komet
, 982 S.W.2d 551, 554 (Tex. App.—San Antonio 1998, no pet.).

26:
Tex. Lab. Code Ann.
 § 21.055 (Vernon 1996)
. 

27:
Johnson
, 2004 WL 456055, at *3; 
McMillon v. Tex. Dep't of Ins
., 963 S.W.2d 935, 940 (Tex. App.—Austin 1998, no pet.). 

28:
Johnson
, 2004 WL 456055, at *3; 
McMillon
, 963 S.W.2d at 940.

29:
Johnson
, 2004 WL 456055, at *3; 
McMillon
, 963 S.W.2d at 940.

30:
See, e.g., Johnson
, 2004 WL 456055
, 
at *3.

31:
See 
T
ex. R. App. P
. 47.1.