Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio

★ ★ ★ ★ ★ ★

**MEMORANDUM OPINION**

No. 04-08-00630-CV

Kirk **CANTU**,
Appellant

v.

**FRITO-LAY, INC**.,
Appellee

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CI-07321
Honorable Lori Massey, Judge Presiding

Opinion by:     Phylis J. Speedlin, Justice

Sitting:          Sandee Bryan Marion, Justice
                  Phylis J. Speedlin, Justice
                  Marialyn Barnard, Justice

Delivered and Filed:   May 13, 2009

AFFIRMED

      Kirk Cantu appeals the trial court's order granting summary judgment and entering a take-

nothing judgment on his employment discrimination claim against his former employer, Frito-Lay,

Inc.  We affirm the judgment of the trial court.

BACKGROUND

Kirk Cantu worked for Frito-Lay as a route sales representative. His assigned route consisted of two HEB grocery stores. On July 26, 2006, Peggy Martin, an employee at one of the HEB stores reported to her manager that she had seen Cantu "scraping something off" bags of chips. She later discovered that the "sell by" dates on eleven bags of chips were missing. The incident was reported to John Tucker, Frito-Lay's account manager for the San Antonio-area HEB stores. Tucker notified Cantu's direct supervisor, Victor Luna, who visited the HEB store to further investigate the matter. Luna met with the store's director, Mike Madie, who provided him with the eleven bags of chips with missing "sell by" dates and a copy of Martin's written statement. Madie informed Luna that Cantu was barred from servicing the store.

Subsequently, Luna met with Madie and asked him to reconsider barring Cantu from the store; Madie refused to reinstate Cantu. Luna and Dan Nagle, Frito-Lay's Zone Business Manager, then met with Cantu and told him of the reported incident. Cantu admitted to "cleaning" some of the bags with his saliva, but otherwise denied any wrongdoing. Cantu was suspended by Frito-Lay pending further efforts to reinstate him in the HEB store. Luna then contacted Albert Hernandez, the Unit Director of the HEB store, to discuss Cantu's reinstatement. Hernandez stressed that Cantu was barred from all HEB stores, and asked Luna not to mention Cantu's name to him again. Luna made two more attempts to reinstate Cantu to the HEB stores, but was again told that Cantu was not allowed to service any HEB location. After independently verifying that the bags of chips Cantu was accused of tampering with did in fact contain stale product, and that a printing error was very unlikely to account for the missing "sell by" dates, Nagle terminated Cantu's employment due to his "being barred from servicing an account because of performance or conduct issues." According to

Frito-Lay's Standards of Conduct for a route sales representative, an employee who is barred from servicing a store for a performance or conduct reason may be subject to dismissal. Cantu was 53 years' old at the time he was terminated. Cantu was replaced by a 35 year-old male employee who was promoted from within the company based on seniority.[1]

Sandra Casso was also a Frito-Lay route sales representative assigned to the Leon Springs HEB store. Casso was related to a store manager and shared with store personnel the fact that the manager was pregnant. The store manager then asked Frito-Lay to reassign Casso to a different store, but requested that Casso not be reprimanded. Upon investigation, Frito-Lay discovered that Casso was also uncomfortable with the familial relationship at the store, and therefore Frito-Lay Zone Sales Leader Ron Quinonez decided that Casso should "relinquish her route" and bid on another route.

Cantu subsequently sued Frito-Lay, alleging the company discriminated against him on the basis of his age and gender. Specifically, Cantu alleged that Frito-Lay discriminated against him when it retained Casso, an under-forty female, even though she had also been barred from servicing an HEB store. Cantu also alleged that he was replaced by a younger employee. After the close of discovery, Frito-Lay moved for traditional summary judgment. Cantu filed a response, and Frito-Lay filed a reply. The trial court granted the motion for summary judgment, dismissing Cantu's age and gender discrimination claims.

---

[1] Route sales representatives are allowed to "bid" on posted route openings; the most senior sales representative to bid on the route is selected to fill the position.

**DISCUSSION**

On appeal, Cantu contends the trial court erred in granting Frito-Lay's motion for summary judgment because a material fact issue existed as to whether he and Casso were "similarly situated" for purposes of establishing a *prima facie* case of employment discrimination.

**A.      Standard of Review for Traditional Summary Judgment**

We review the trial court's granting of a summary judgment *de novo. Reynosa v. Huff,* 21 S.W.3d 510, 512 (Tex. App.—San Antonio 2000, no pet.). Accordingly, we will uphold a traditional summary judgment only if the summary judgment record establishes that there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law on a ground set forth in the motion. *See* TEX. R. CIV. P. 166a(c); *Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex. 1997). In determining whether a disputed issue of material fact exists which precludes summary judgment, we view as true all evidence favorable to the non-movant and indulge every reasonable inference, and resolve all doubts, in the non-movant's favor. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548-49 (Tex. 1985). If the movant establishes his right to summary judgment as a matter of law, the burden then shifts to the non-movant to raise fact issues that would preclude summary judgment. *Tex. Workers' Comp. Ins. Fund v. Simon,* 980 S.W.2d 730, 733 (Tex. App.—San Antonio 1998, no pet.) (citing *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex. 1979)).

**B.      Did Frito-Lay Negate as a Matter of Law at Least One Element of Cantu's Employment Discrimination Claim?**

Under the Texas Commission on Human Rights Act ("the Act"), an employer may not discriminate against or discharge an employee based on "race, color, disability, religion, sex, national origin, or age." TEX. LAB. CODE ANN. § 21.051 (Vernon 2006); *AutoZone, Inc. v. Reyes*, 272

S.W.3d 588, 592 (Tex. 2008) (per curiam). To establish a violation of the Act, a plaintiff must show that he or she was (1) a member of the class protected by the Act, (2) qualified for his or her employment position, (3) terminated by the employer, and (4) treated less favorably than similarly situated members of the opposing class. *Ysleta Indep. Sch. Dist. v. Monarrez,* 177 S.W.3d 915, 917 (Tex. 2005) (per curiam); *see Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142 (2000). In cases brought under the Act, we follow analogous federal precedent. *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001).

In his petition, Cantu alleged he was terminated after HEB barred him from servicing their store, while Frito-Lay "did not terminate a similarly situated female employee that had also been barred from a customer account."[2] Frito-Lay moved for summary judgment challenging the fourth prong of Cantu's cause of action, *i.e.,* that Cantu was treated less favorably than a similarly situated member of the opposing class. Frito-Lay argued that Cantu could not establish a *prima facie* case of discrimination because he was not similarly situated to his comparator, Ms. Casso.[3]

Cantu argues that the summary judgment evidence creates a fact issue that he and Casso were similarly situated because both were barred from servicing a store, an offense which Frito-Lay

---

[2] Cantu also alleged that he was "replaced by a much younger employee." Cantu, however, does not discuss this argument in his brief. The undisputed evidence reflects that the younger man who replaced Cantu was chosen through a blind bidding process. Frito-Lay's policy is to select route sales representatives for more advanced routes by permitting the existing sales representatives to bid on open positions, and the most senior sales representative to sign the bid sheet is advanced.

[3] Frito-Lay's motion for summary judgment also addressed the insufficiency of the evidence with respect to Cantu's burden to raise a fact issue on pretext, which only becomes relevant after Cantu has established a *prima facie* case of discrimination. *See Reeves,* 530 U.S. at 142-43 (explaining that the burden-shifting analysis in an employment discrimination case first requires the plaintiff to come forward with a *prima facie* case of discrimination; if a *prima facie* case is established, the burden then shifts to the employer to present evidence of a legitimate, nondiscriminatory reason for its action; once the employer has articulated legitimate, nondiscriminatory reasons for its actions, the burden shifts back to the plaintiff to prove the employer's articulated reasons are merely a pretext for discrimination.). Because the trial court did not state the specific grounds on which it granted summary judgment, we must affirm the judgment if "any of the theories advanced [in the motion] are meritorious." *Western Inv., Inc., v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).

managers conceded typically results in termination. We disagree because, as the Texas Supreme Court has instructed, for employees to be similarly situated, "their circumstances [must be] comparable in all material respects, including similar standards, supervisors, and conduct." *Monarrez*, 177 S.W.3d at 917. Accordingly, we focus our analysis not only on the ultimate disciplinary action (*i.e.*, barred from servicing a store), but also on the underlying conduct leading to the disciplinary action. *Id.* at 917-18; *AutoZone*, 272 S.W.3d at 594.

To prove discrimination based on disparate discipline, "the disciplined and undisciplined employees' misconduct must be of 'comparable seriousness.'" *Monarrez,* 177 S.W.3d at 917; *see AutoZone*, 272 S.W.3d at 594. The situations and conduct of the employees in question must be "nearly identical." *Monarrez,* 177 S.W.3d at 917-18; *see also Perez v. Tex. Dep't of Criminal Justice,* 395 F.3d 206, 213 (5th Cir. 2004). Employees with different responsibilities, supervisors, capabilities, work rule violations, or disciplinary records are not considered to be "nearly identical." *Monarrez,* 177 S.W.3d at 917; *see also Okoye v. Univ. of Tex. Houston Health Sci. Ctr.,* 245 F.3d 507, 514-15 (5th Cir. 2001); *Herbert v. City of Forest Hill,* 189 S.W.3d 369, 376 (Tex. App.—Fort Worth 2006, no pet.); *Winters v. Chubb & Son, Inc.,* 132 S.W.3d 568, 578 (Tex. App.—Houston [14th Dist.] 2004, no pet.). The situations and conduct of employees is not nearly identical "when the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer." *Wallace v. Methodist Hosp. Sys.,* 271 F.3d 212, 221 (5th Cir. 2001); *see also Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 305 (5th Cir. 2000) (holding that "striking differences" between the plaintiff's and his comparator's situations more than accounted for the different treatment they received from their employer). "To prove discrimination based upon disparate discipline, the plaintiff must usually show 'that the

*misconduct* for which [he] was discharged was nearly identical to that *engaged in* by a [female] employee whom [the company] retained." *Monarrez*, 177 S.W.3d at 918 (emphasis added) (quoting *Smith v. Wal-Mart Stores* (No. 471), 891 F.2d 1177, 1180 (5th Cir. 1990)).

In *Monarrez*, male bus driver mechanics sued the school district after they were terminated for time card violations while female bus drivers/attendants were merely reprimanded for violating the same policy. *Monarrez*, 177 S.W.3d at 916-17. The evidence, however, showed that the males engaged in more egregious conduct by clocking in and out for co-workers who did not report to work. *Id.* at 916. The females merely clocked-in for one another for the sake of convenience. *Id.* at 918. The Court held that when viewing the "nature and degree" of the time card violations, the respective violations were not of "comparable seriousness," and hence reversed the court of appeals' judgment in favor of the males because the evidence was legally insufficient to support their employment discrimination claims. *Id.*; *see also AutoZone*, 272 S.W.3d at 594-95 (holding that employee could not prove age discrimination where his alleged violation of sexual harassment policy was more serious than comparator's).

Following this legal precedent, and viewing all facts and inferences in a light most favorable to Cantu, our review of the record leads us to conclude that different conduct led to HEB's decision to bar Cantu and Casso. The evidence shows Cantu "cleaned" eleven bags of product with his saliva. This was observed by Peggy Martin, who initially reported Cantu for rubbing "sell by" dates off of products. Cantu denied any wrongdoing and claimed that Martin falsely reported him due to a personality conflict.[4] Other evidence showed that Frito-Lay independently examined the bags at

---

[4] Cantu points to the following evidence in support of the proposition that he had a personality conflict with Peggy Martin: 1) the deposition testimony of Quinonez, who stated that he "believe[d] [Cantu] mentioned that [Peggy Martin] may . . . not have liked [Cantu] or [that] they had a personality conflict;" 2) the deposition testimony of Luna, who stated that "Kirk had just told me that . . . he had had some run-ins with Peggy;" and 3) the deposition testimony

issue and determined that they contained stale product and that it was very unlikely that a printing error could account for the missing "sell by" dates. Further, despite numerous attempts to have Cantu reinstated, the HEB Store Director and Unit Director considered his actions egregious enough to bar him from servicing all of their stores, and also refused to discuss Cantu any further. Frito-Lay cited the reason for Cantu's termination as "being barred from servicing an account because of performance or conduct issues." According to Frito-Lay's Standards of Conduct, an employee who is barred from servicing an account for a performance or conduct reason is subject to corrective action, including immediate dismissal. Casso, on the other hand, shared personal information about a store manager to whom she was related. Casso was only barred from the Leon Springs HEB store where her relative worked, and was not barred from any other HEB store. Casso's relative, who was a manager at the HEB store, asked that Casso not be reprimanded.

Even assuming a personality conflict existed between Cantu and Martin—as we must under the summary judgment standard of review—the record demonstrates that Cantu's conduct was not nearly identical to Casso's. *See AutoZone*, 272 S.W.3d at 594-95; *see also Janssen Pharmaceutica, Inc. v. Martinez*, No. 08-06-00265-CV, 2009 WL 416472, at *6 (Tex. App.—El Paso Feb. 19, 2009, no pet.) (holding that female sales representative who falsified time records was not similarly situated to male employees who merely failed to report time entries for purposes of disparate discipline analysis because her conduct was more serious and thus not nearly identical to the males' conduct). While Cantu denies any wrongdoing, the summary judgment evidence establishes that he at least wiped bags of Frito-Lay chips with his saliva, conduct that is qualitatively different and

of Issy Perez, Frito-Lay's Regional Vice President, who alluded to the possibility of the existence of a "hidden agenda against Mr. Cantu," but then stated that Quinonez debriefed him after conversing with the store director and confirmed that there was no hidden agenda.

distinct from the imprudent sharing of personal information by Casso. Furthermore, because of Cantu's conduct, HEB management refused to consider Cantu's return and barred him from servicing all of their stores, whereas HEB only asked that Casso be reassigned and requested that no disciplinary action be taken against her. *See Salguero v. City of Clovis*, 366 F.3d 1168, 1176 (10th Cir. 2004) (noting that appellate court views facts "as they appear to the person making the decision to terminate"). Because their conduct was not "nearly identical," the summary judgment evidence establishes that Cantu was not "similarly situated" to Casso for purposes of establishing discrimination based upon disparate discipline. Accordingly, Frito-Lay negated at least one element of Cantu's cause of action, and thus proved its entitlement to judgment as a matter of law. The trial court did not err in granting summary judgment in favor of Frito-Lay.

## CONCLUSION

The judgment of the trial court is affirmed.

Phylis J. Speedlin, Justice