Opinion issued January 26, 2012



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00947-CV

———————————

Jiuhong Yuan, M.D., Appellant

V.

The
University of Texas Health Science Center                    at Houston, Appellee



 



 

On Appeal from the 157th District Court

Harris County, Texas



Trial Court Case No. 2008-53937

 



 

MEMORANDUM OPINION

Dr. Jiuhong Yuan appeals the summary judgment of his suit
against the University of Texas Health Science Center
at Houston (UT Health) in which he alleged retaliation for having filed a report
of sexual harassment.  Yuan contends the
summary judgment was error because he had established a prima facie case and
there exist questions of material fact precluding summary judgment.  We affirm.

Background

Dr. Yuan is a research associate in UT Health’s
Department of Surgery, Division of Urology.  In September 2005, the Division of Urology and
the Department of Biochemistry and Molecular Biology began a collaborative
research project based in the lab of the project’s principal investigator, Dr.
Yang Xia, an associate professor in the Department of Biochemistry and
Molecular Biology.  Dr. Yuan collected
and analyzed data for the project, reporting to both Dr.
Xia and Dr. Run Wang, the
Director of the Division of Urology.

According
to Dr. Yuan, the collaboration between the Division of Urology
and the Department of Biochemistry and Molecular Biology proceeded smoothly
until his discovery in March 2006 [1]
that Drs. Xia and Rodney Kellems, Chair of the Department of Biochemistry and Molecular
Biology, were having an affair.  No
longer comfortable reporting to Dr. Xia in her office, Dr. Yuan
began communicating via email and through his supervisor, Dr. Wang.  According to Dr. Yuan, both Drs. Xia and Kellems felt that Dr. Yuan was being disrespectful of Dr.
Xia and complained to Dr. Wang about his behavior and demanded an apology.  After Dr. Wang advised him to do so for the
sake of the project, Dr. Yuan apologized.

Dr. Yuan
contends that in May 2006 Dr. Xia used data from their collaborative research
to submit a NIH grant application that failed to list either Dr. Wang or Dr.
Yuan as co-investigators.  He also alleges
that Dr. Xia presented the material at an international meeting without
notifying them or crediting them for their contribution.  He further complains that his reputation in
the scientific community was damaged when Dr. Kellems
contacted the Asian Journal of Andrology and accused
him of using the project’s data in an article he sought to publish in the
Journal.

The
working relationship with Drs. Xia and Kellems was
strained further in early September 2006, when Dr. Yuan ran into them at an
out-of-town restaurant.  The next working
day, in a meeting with Dr. Kellems, the purpose of
which, according to Dr. Yuan, was to gauge his reaction to their most recent
encounter, Dr. Yuan informed Dr. Kellems that he felt
that Dr. Xia owed him an apology for the demeaning way she treated him.  

A little
over a week later, Dr. Xia ended the collaboration between
the two groups, due both
to budget constraints and conflicts between her and Dr. Yuan.  Shortly thereafter, Dr. Xia informed Dr. Wang that she wanted to publish a paper
based upon their collaboration.  She
offered Dr. Wang the second to the last author position and Dr. Yuan the first
author position, contingent upon his cooperation and production of all original
research materials in his possession. 
Dr. Yuan contends that Dr. Kellems also
pressured him to give Dr. Xia all of the project’s original data. Dr. Yuan
maintains that he and Dr. Wang decided to complete the project and consult the
“medical school legal service” before joining Dr. Xia’s proposed publication
opportunity.  Dr. Yuan kept the original
research material.  

On May 30,
2007, based upon this history dating from Spring 2006,
Dr. Yuan filed a complaint with UT Health alleging sexual harassment and
research misconduct on the part of Drs. Xia and Kellems.  In July 2007, while Dr. Yuan’s internal
complaint was pending, Dr. Xia prepared and forwarded to Dr. Wang a manuscript
for publication on the topic of the collaborative
research project (adenosine signaling and priapism) and her offer to both Drs. Wang
and Yuan of co-authorship listings.  She
also professed in an email her willingness to collaborate on a second
manuscript in which Dr. Yuan would be listed as the first author.  Dr. Wang forwarded the message to Dr. Yuan,
asking his consideration of her suggestion of publishing two papers.  Although he had yet to read the manuscript,
Dr. Yuan believed that he was entitled to be listed as first author and Dr.
Wang the co-corresponding author on the current manuscript: “[S]end me the
manuscript and I’ll show her where our contribution is and why the contribution
deserves first author and co-corresponding author.”  

In an email to Drs. Yuan and Xia, Dr. Wang stated that he
did not believe it was appropriate for him to be listed as a co-corresponding
author for Dr. Xia’s current manuscript because the manuscript did not
involve the in-vivo data that he had been involved in generating and he
declined her offer of co-authorship because of Dr. Xia and Dr. Yuan’s dispute
with regard to the order of authorship.  Dr.
Xia responded, stating that although she was disappointed that Dr. Yuan would
not agree to co-author the manuscript, she was still happy to work with both Drs.
Wang and Yuan to publish a second manuscript based upon the in-vivo data
generated during their collaborative project the previous year and Dr. Yuan
could be the first author of that manuscript.

On August
23, 2007, Dr. Yuan was informed that UT
Health had concluded its investigation into his allegations of sexual
harassment and research misconduct and because of conflicting witness accounts,
no determination could be made whether Drs. Xia and Kellems
violated the university’s sexual harassment policy. Moreover, the report stated
Dr. Yuan’s research misconduct allegations were more appropriately
characterized as a dispute regarding authorship and the roles and
responsibilities of scientists and a trainee engaged in a collaborative
research process.  UT Health directed the parties to
internal guidelines applicable to faculty research that expressly stated the university
policy:  “University administration will
not be become involved in authorship disputes.”

On November 1, 2007, Dr. Yuan filed a complaint with the
Texas Workforce Commission accusing UT Health
of retaliating against him for reporting sexual harassment.  

In January
2008, Dr. Xia emailed Dr. Wang stating: 
“. . . you mentioned earlier that you may reconsider to be coauthor in
the manuscript if the school's investigation is over and cleared.  Now the school’s investigation is over and
cleared as you know, I just want to make sure whether you and [Dr. Yuan] still
decline to be coauthors in the manuscript. 
Please let me know by e-mail.”

Dr. Wang responded, thanking Dr. Xia
for the offer but declining because he believed it not appropriate for him to
be listed as co-author of the manuscript. 
He indicated that he would forward the email to Dr. Yuan and urge his serious
consideration.  Dr. Wang forwarded the
message to both Drs. Yuan and Kellems.  Dr. Yuan never responded.

Dr. Xia’s paper was published by the
Journal of Clinical Investigation (JCI) in March 2008.  Dr. Yuan was not listed as an author.  Angered by the omission of his name from the
list of credits, Dr. Yuan contacted JCI complaining that he was the project’s principal
person and deserved identification as an author.  JCI then contacted Dr. Peter Davis, UT Health’s Executive Vice President
for Research, requesting guidance with respect to the authorship dispute and
advising him that JCI policy required all of the authors’ written agreement to
issue a correction.

UT Health’s Davis, in turn, contacted
Dr. Xia and the other ten authors about Dr. Yuan’s complaint: “The Executive
Editor of the Journal of Clinical Investigation has asked me to respond to an
allegation made by Dr. Yuan that his name should have been included as an
author in a paper recently submitted to and accepted for publication in
JCI.”  Dr. Davis pointed out that JCI
does not get involved in authorship disputes and refers them to the
corresponding author’s institution for a decision.  He also noted, “. . . it is the policy of [UT Health] not to take an
institutional position with respect to the authorship of papers that include
our faculty” and attached a copy of the Office of Research’s “Practical Guide
to Research at the University of Texas Health Sciences Center at Houston” that recites
the criteria to be used to determine authorship of research publications.

I am requesting that you and your colleagues who are
authors on this paper review the [UT
Health] guidelines, review Dr. Yuan’s enumerated concerns and the
information that is included in the JCI paper. 
I ask you then to notify me as to whether or not it is the unanimous
decision of the authors that the authorship of this paper should be
changed.  If it is not the unanimous
decision of the authors that a change should be made, I will notify the JCI
that no change in authorship is warranted. 
If there is unanimous agreement that the authorship should be amended to
include Dr. Yuan, I will ask you and the authors to notify JCI of your request
for a correction to the authors of this paper to be made in a subsequent issue
of JCI.

Davis replied to JCI: “After
reviewing with the authors the issues raised in your
letter of 03/18/08 I am confident that the selection of individuals to be
included as authors of the paper by Dr. Xia and colleagues was handled
appropriately.  I see no need to consider
changes to the authorship of the paper.” 
A correction to the authorship list was never made.

The Civil Rights Division of the
Texas Workforce Commission issued a Notice of Right to File a Civil Action
dated July 10, 2008, and on September
5, 2008, Dr. Yuan sued UT Health for retaliation against him for having filed a
discrimination complaint under section 21.055 of the Texas Labor Code.  UT Health moved for summary judgment on the
grounds that (1) Dr. Yuan suffered no actionable adverse employment action, and
(2) even if he had, he did not meet his burden of showing that the articulated,
legitimate, non-retaliatory reason for Davis’ email to JCI was pretextual and that the real reason was retaliation.  The trial court granted UT Health’s Motion for
Summary Judgment.  

Discussion

A defendant moving for traditional summary
judgment must either (1) conclusively
negate at least one of the essential elements of each of the plaintiff’s causes
of action or (2) conclusively establish each essential element
of an affirmative defense.  Cathey
v. Booth, 900 S.W.2d 339,
341 (Tex. 1995).  A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the
evidence.  See City
of Keller v. Wilson, 168
S.W.3d 802, 816 (Tex. 2005).  

If the movant meets its burden, the burden then shifts to
the nonmovant to raise a genuine issue of material
fact precluding summary judgment.  See Centeq Realty, Inc. v. Siegler,
899 S.W.2d 195, 197 (Tex. 1995). 
The evidence raises a genuine issue of fact if reasonable and
fair-minded jurors could differ in their conclusions in light of all of the
summary judgment evidence.  See Goodyear Tire & Rubber Co. v. Mayes, 236 S.W.3d 754, 755 (Tex. 2007)
(per curiam); City of Keller,
168 S.W.3d at 822–24.  To
determine if the nonmovant has raised a fact issue,
we review the entire record in the light most favorable to the nonmovant, crediting favorable evidence if reasonable
jurors could do so, and disregarding contrary evidence unless reasonable jurors
could not.  See City of Keller, 168 S.W.3d at 827.  We indulge every reasonable inference and
resolve any doubts in the nonmovant’s favor.  See Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002)
(citing Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997)).  When, as here, the
trial court’s summary judgment does not state the basis for the court’s
decision, we must uphold the judgment if any of the theories advanced in the
motion are meritorious.  Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 216 (Tex. 2003).

To establish a prima facie case of retaliation, Dr. Yuan
must show that: (l) he engaged in a protected activity, (2) UT Health
took an adverse employment action against him, and (3) it did so because of his
participation in the protected activity. 
Herbert v. City of Forest Hill, 189 S.W.3d 369, 377 (Tex.
App.—Fort Worth 2006, no pet.). 
Dr. Yuan must establish that, absent his protected activity, the adverse
employment action would not have occurred when it did.  See id.; McMillon v. Texas Dep’t of Ins.,
963 S.W.2d 935, 940 (Tex. App.—Austin 1998, no pet.).  Dr. Yuan need not establish that the
protected activity was the sole cause of UT’s employment actions.  Herbert, 189 S.W.3d at 377.  An adverse employment action is one that a
reasonable employee would find to be “materially adverse,” i.e., “the
employer’s actions must be harmful to the point that they could well dissuade a
reasonable worker from making or supporting a charge of discrimination” under federal
law.  Burlington N. &
Santa Fe Ry. Co. v. White,
548 U.S. 53, 57 (2006) (internal quotations omitted).[2] 

Were
Dr. Yuan to establish a prima facie case of retaliation, the burden shifts to UT Health
to articulate a non-discriminatory reason for the adverse employment
action.  McCoy v.
Texas Instruments, Inc.,
183 S.W.3d 548, 555 (Tex. App.—Dallas 2006, no pet.).  Once UT Health
articulates a legitimate, non-discriminatory reason for an employment action,
the burden returns to Dr. Yuan to show that the stated reasons
were pretextual and that the real reason was
retaliation.  See Quantum Chem. Corp.
v. Toennies,
47 S.W.3d 473, 482 (Tex. 2001) (stating plaintiffs pursing claims under
TCHR must “show that discrimination was a motivating factor in an adverse
employment decision”). 

For purposes of this summary judgment, UT Health
concedes that with respect to the first element of his retaliation claim—whether
Dr. Yuan engaged in a protected activity—Dr. Yuan established a prima facie
case.  The parties disagree, however, as
to whether Dr. Yuan has met his burden with respect to the second element of
his claim—that he suffered an adverse employment action.

Dr. Yuan’s contention is that when Dr. Davis weighed in on the authorship
dispute and notified JCI that Dr. Yuan should not be listed as an author on the
paper submitted by Dr. Xia, this was in violation of UT Health’s stated policy,
and was done in retaliation for Dr. Yuan’s filing his Workforce Commission complaint.  Dr. Davis’s email to JCI, argues Dr. Yuan,
effectively endorsed Dr. Xia’s and her colleague’s decision not to list Dr.
Yuan as the first author of the paper. 
Dr. Yuan contends that support of Dr. Xia harms him and constitutes UT
Health’s materially adverse action taken against him.


          The summary judgment record makes
clear that Dr. Davis was not involved in the authorship decision.  JCI policy required
written agreement of every author for a revised authorship list.  The summary judgment evidence
conclusively establishes that Dr. Davis forwarded JCI’s email to Dr. Xia and her
colleagues and solicited their determination as to changes in authorship.  See City of Keller, 168 S.W.3d at 816 (stating matter
is conclusively established if reasonable people could not differ as to
conclusion to be drawn from evidence).  After Dr. Xia and her colleagues did not
unanimously agree change was appropriate, Dr. Davis informed JCI that no change
in authorship was warranted.  Rather than
competent summary judgment evidence to raise a question of material fact with
respect to this issue, Dr. Yuan offers an alternative interpretation: one could
reasonably infer that Dr. Davis’ email suggests that he was siding with Dr. Xia
and endorsing her decision to exclude him from the list of authors.  The summary judgment evidence does not
support such an inference.  Although Dr.
Davis stated that he was “confident that the selection of individuals to be included as authors of the
paper by Dr. Xia and colleagues was handled appropriately” and saw “no need to
consider changes to the authorship of the paper,” examined in context, the
evidence is clear that he neither endorsed nor sided with Dr. Xia, but
simply notified JCI of the named authors’ decision.  See id. at
827 (requiring appellate courts to consider entire record).  Dr. Davis was a messenger, conveying the
authors’ decision to the JCI.  See id.
at 816 (stating matter is conclusively established if
reasonable people could not differ as to conclusion to be drawn from
evidence).  

          After reviewing the entire record in
the light most favorable to Dr. Yuan, the nonmovant,
and indulging every reasonable inference in Dr. Yuan’s favor, Dr. Yuan did not present evidence
raising a fact issue as to whether Dr. Davis took an adverse employment action
against him.  Because Dr. Yuan cannot
make a prima facie case of
retaliation, we hold that the trial court did not error in granting UT Health’s motion for summary
judgment.

Conclusion

          We
affirm the trial court’s judgment.

 

 

                                                                      Jim
Sharp

                                                                      Justice


 

Panel
consists of Justices Jennings, Sharp, and Brown.











[1]
        The majority of the facts
detailing Dr. Yuans’ allegations against Drs. Xia and
Kellems are taken from Dr. Yuan’s internal report of
sexual harassment, which he submitted on May 30, 2007.





[2]         The
Texas Labor Code discrimination provisions are modeled after federal law, and
Texas courts follow the federal statutes and cases in applying the Texas
statute.  See Tex. Lab.
Code Ann. § 21.001 (West 2006); AutoZone, Inc. v. Reyes, 272 S.W.3d 588, 592 (Tex. 2008) (“By
adopting the Act, the Legislature ‘intended to correlate state law with federal law in employment discrimination
cases.’”).