**AFFIRMED and Opinion Filed July 11, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00501-CV

**STEPHANIE D. CRAWFORD, Appellant**
**V.**
**TEXAS HEART HOSPITAL OF THE SOUTHWEST LLP D/B/A THE HEART HOSPITAL OF BAYLOR PLANO, Appellee**

On Appeal from the 95th District Court
Dallas County, Texas
Trial Court Cause No. DC-16-14418

## MEMORANDUM OPINION

Before Justices Whitehill, Partida-Kipness, and Pedersen, III
Opinion by Justice Whitehill

Stephanie Crawford sued Texas Heart Hospital for retaliation after the Hospital terminated her employment as an operating room nurse. Following a bench trial, the trial court entered a final, take-nothing judgment against Crawford. In two issues, Crawford argues that the trial court's judgment was in error because (i) she proved her retaliation case and (ii) she established disparate treatment because another similarly situated employee was not disciplined.

A pivotal question is whether undisputed evidence that, despite several prior warnings, the nurse on several occasions violated hospital policies is factually sufficient to support the trial court's finding that the hospital terminated the nurse for reasons other than her reporting alleged poor practices at the hospital. Stated differently, considering the evidence as a whole, does the record show that the trial court's fact findings were clearly wrong and manifestly unjust?

We do not re-weigh the factfinder's credibility determinations. Instead, we conclude that a reasonable factfinder on this record could have reasonably found that there was no retaliation in this case. We thus affirm the trial court's judgment.

## I. BACKGROUND

Crawford, an operating room nurse, sued the Hospital for retaliation under the Nurse Protection Act following her termination. *See* TEX. OCC. CODE ANN. §§ 301.413(b), 301.4025(b). According to Crawford, the Hospital retaliated against her because she reported safety concerns. The Hospital denied Crawford's allegations and argued that her termination resulted from several policy violations impacting patient safety.

Following a bench trial, the trial court dismissed Crawford's claims with prejudice and entered a take–nothing judgment against her. This appeal followed.

## II. ANALYSIS

**A.    First Issue:  Did the trial court err by determining that Crawford did not meet her burden to establish retaliation?**

**1.    Standard of Review**

Crawford's complaint about the take-nothing judgment is essentially a challenge to the factual sufficiency of the evidence. We review a trial court's fact findings under the same legal and factual sufficiency of the evidence standards used when determining if sufficient evidence exists to support an answer to a jury question. *See Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex. 1994).

When an appellant with the burden of proof challenges the factual sufficiency of the evidence on an issue, we consider all the evidence supporting and contradicting the judgment. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). We set aside the finding for factual insufficiency only if the finding is so contrary to the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

In a bench trial, the trial court, as factfinder, is the sole judge of the witnesses' credibility. *Wyde v. Francesconi*, 566 S.W.3d 890, 894 (Tex. App.—Dallas 2018, no pet.). As long as the evidence falls "within the zone of reasonable disagreement," we will not substitute our judgment for the factfinder's decisions. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

When, as here, the trial court does not file express findings of fact and conclusions of law, we presume the trial court made all necessary findings to support the judgment. *See Pulley v. Milberger*, 198 S.W.3d 418, 427 (Tex. App.—Dallas 2006, pet. denied).

Consequently, if the trial court's implied findings are supported by the evidence, we must uphold the judgment on any theory of law applicable to the case. *Sink v. Sink*, 364 S.W.3d 340, 344–345 (Tex. App.—Dallas 2012, no pet.).

### 2. Applicable Law

The Nurse Practice Act provides that:

> A nurse may report to the nurse's employer or another entity at which the nurse is authorized to practice any situation that the nurse has reasonable cause to believe exposes a patient to substantial risk of harm as a result of a failure to provide patient care that conforms to minimum standards of acceptable and prevailing professional practice or to statutory, regulatory, or accreditation standards . . . . .

TEX. OCC. CODE § 301.4025(b). A report is made in good faith if the reporting nurse believed that the report was required or authorized and there was a reasonable factual or legal basis for that belief. *Id*. §301.4011.

The act further provides that, "A nurse's employer may not "suspend, terminate, or otherwise discipline, discriminate against, or retaliate against a person . . . who reports in good faith." *Id*. §301.413(b)(1).

A person bringing an action under this subsection has the burden of proof. *Id*. §301.413(e).

If a plaintiff is terminated within sixty days of making a report, there is a rebuttable presumption that the employer retaliated against the plaintiff. *Id*. But that presumption applies

–3–

only if the plaintiff asserts his or her claim within sixty days of being terminated and other factors exist. *Id.* § 301.413(e).

To establish retaliation, a plaintiff must show that: (i) she engaged in a protected activity; (ii) an adverse employment action occurred; and (iii) a causal link existed between the protected activity and the adverse action. *See McCoy v. Texas Inst., In*c., 183 S.W.3d 548, 555 (Tex. App.—Dallas 2006, no pet.). Although not explicitly stated in the statute, to establish a retaliation claim under the Texas Occupations Code, a plaintiff must show that her "protected behavior was the cause of the employer's decision to . . . terminate [her] employment . . . when it did." *Almeida v. Bio-Medical Applications of Texas, Inc*., No. EP-16-CV-263-DB, 2017 WL 3841929, at *6 (W.D. Tex. 2017).

If a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant-employer to articulate a legitimate, nondiscriminatory purpose for the adverse employment action. *Dias v. Goodman Mfg. Co., L.P*., 214 S.W.3d 672, 676 (Tex. App.—Houston [14th Dist.] 2007, pet. denied); *see also McCoy,* 183 S.W.3d at 555 (retaliation uses the same burden shifting analysis as race discrimination claims).

After the employer articulates legitimate, nondiscriminatory reasons, the burden shifts back to the plaintiff to provide that the employer's articulated reasons are a mere pretext. *See Herbert v. City of Forrest Hill*, 189 S.W.3d 369, 375 (Tex. App.—Fort Worth 2006, no pet.).

### 3.     The Evidence Adduced at Trial

Here, there is no initial presumption of retaliation because Crawford does not assert, nor does the record reflect that, she asserted her complaints within sixty days of her termination. *See* TEX. OCC. CODE §301.413(e).

Crawford worked for the Hospital as a surgical nurse from September 8, 2014 to March 8, 2016 (when she was terminated). She reported to Erin Glanz, the surgery and recovery room manager. Courtney Yost was her training manager.

During her tenure at the Hospital, Crawford made several process improvement suggestions to Glanz and Yost. These suggestions, made via email, generally concerned: (i) running out of supplies (November 2014), (ii) issues with the evening shift (January 21, 2015), (iii) preliminary counting and documentation (April 22, 2015), (iv) timeout difficulties (May 1, 2015), (v) when operating room damp dusting should occur (June 18, 2015), (v) a scrub nurse failing to count concurrently (September 18, 2015), and (iv) comingling clean and dirty surgical items on the surgical cart (October 26, 2015). Glanz said that she encouraged employees to come to her with ideas or concerns, addressed all of Crawford's ideas, and often used Crawford's suggestions as a source of topics for staff training meetings.

Crawford testified about these concerns in detail. She acknowledged, however, that Glanz told her to enter reports frequently and whenever she felt like it.[1] According to Crawford, Glanz responded to her concerns, her "door was always open," and she was always available to talk. Crawford said that she never had any issues with Glanz and they had a good working relationship. Glanz was a good manager, very supportive of her, accommodated some attendance issues Crawford had, and was one of the best managers Crawford ever had.

Crawford also said she did not believe that Glanz retaliated against her. But she changed her mind after she heard Glanz's trial testimony, because Glanz "labeled [her] an unsafe nurse" and "presented a whole different attitude to [Crawford] than she did to the court."

---

[1] The parties refer to these as MIDAS reports. MIDAS is the electronic system used to generate reports at the Hospital, including audits and incident reports. Anyone who works for the Hospital can enter a MIDAS.

–5–

Crawford's first warning, in the spring of 2015, was oral and concerned her use of social media. Glanz was not in then, but Crawford was counseled by the Hospital's director of surgical services, Larry Pierce. Crawford described the incident as hearing a doctor tell a funny joke that she hen posted on Facebook. Pierce told her not to post those types of things again.

In November 2015, Crawford, at a doctor's request, administered a deep sedative drug, Propofol, to a surgical patient in violation of Hospital policy and the Nursing Practices Act. Crawford admitted that Hospital policy prohibited nurses from administering deep sedation medication, without exception. After the Propofol was administered, the patient's heart stopped beating for three minutes and Crawford had to do chest compressions to save his life. The patient had to be admitted to the ICU and have his surgical procedure rescheduled. Nonetheless, Crawford insisted the patient was not harmed because "he didn't die."

Then, during a shift-break, Crawford posted about the chest compressions on Facebook. Crawford admitted that she had been warned about posting on social media and that posting about patient care takes away from a patient's dignity. Crawford also admitted that she was aware of the Hospital's social media policy and that it applied to her.

Although she was aware that she was required to document in the nursing record that she had administered the anesthesia, Crawford did not do so. Later, Glanz learned about the incident after Crawford entered a MIDAS report and heard from the charge nurse and supervisor.

Glanz described the Propofol incident as a "safety issue," but she did not terminate Crawford at that time because she wanted to give her a second chance. After consulting with Larry Pierce, on November 20, 2015, Glanz issued Crawford a final warning for administering the Propofol, posting on Facebook, and failing to document the administration of the Propofol in the nursing record. The warning said, among other things, that: "[f]ailure to exhibit immediate and sustained improvement in all areas outlined above or any other unacceptable conduct or

performance may result in further corrective action up to and including separation from employment." Crawford signed the warning and understood that further infractions could lead to her termination.

Crawford said she did not believe that the final warning was retaliatory. In fact, on January 22, she sent Glanz an email saying that Glanz was the best manager ever and she did not blame Glanz for the warning.

Crawford subsequently had two additional policy violations concerning patient safety. The first occurred on February 29, 2015 when Crawford mislabeled a patient specimen.

Then, on March 1, 2016, Crawford failed to accurately account for all of the items for which she was responsible during a patient surgery. The patient's chest was closed and it was then discovered that the count was incorrect. The missing item was found in the patient's chest via x-ray. Thus, the patient had to be re-opened to remove that item, which removal required additional operating room and anesthesia time for the patient.

Crawford acknowledged that she had been trained on all of the surgical count competencies expected of a circulating nurse. Although she was required to visualize every item as it was counted, Crawford admitted that she had just relied on what the scrub nurse had told her. Glanz also verified that as the circulating nurse, Crawford was responsible for keeping the count correct.[2]

Consequently, because Crawford made multiple errors that harmed patients and did not follow Hospital policy and procedures, Glanz decided to terminate Crawford. According to Glanz, Crawford's prior process improvement suggestions did not factor into Glanz's decision. Instead, she decided to terminate Crawford because she thought Crawford was a risk to patients.

---

[2] Crawford's version of events varied. She said she left the room and returned and was not sure the count was correct. She also said the she became distracted from the count and she it was correct even though she was not sure that it was. Regardless, there is no dispute that Hospital counting policy was not followed.

Likewise, Larry Pierce did not recall Crawford's process improvement suggestions and said Crawford was terminated because of "a multitude of patient safety incidents." He did not retaliate against Crawford and has no reason to believe that anyone else did so.

Crawford offered various excuses for her policy violations, but she never disputed that they occurred. And she failed to establish that "but for" her process improvement suggestions she would not have been terminated. Indeed, there is no evidence that anyone involved had a negative attitude about the process improvement suggestions. Thus, the evidence supports the trial court's implied finding that Crawford did not meet her burden to prove retaliation. Moreover, the evidence supports the trial court's implied finding that the Hospital established legitimate, non-retaliatory terminating Crawford. *See Dias*, 214 S.W.3d at 676.

We thus resolve Crawford's first issue against her.[3]

**B.      Second Issue:  Did the court use a proper comparator?**

Crawford's second issue argues that the trial court erred because she proved that similarly situated employees received disparate treatment. *See Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917–18 (Tex. 2005). Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct. *Id.* "The situations and conduct of the employees in question must be nearly identical." *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 584 (Tex. 2017). Thus, "[e]mployees with different responsibilities, supervisors, capabilities, work rule violations, or disciplinary records are not considered nearly identical." *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 594 (Tex. 2008).

---

[3] We need not reach the Hospital's alternative argument that the judgment should be affirmed because Crawford's suit is time-barred. Tex. R. App. P. 47.1.

–8–

Crawford argues that the Hospital treated Alphane McKinney, who was also involved in the improper counting incident, differently than it did her. But the record reflects that McKinney was not similarly situated to Crawford for several reasons.

First, Crawford and McKinney had different jobs and responsibilities. McKinney was a non-employee scrub nurse provided to the Hospital through an agency. Crawford, however, was a circulating nurse employed by the Hospital. Scrub technicians earn about half as much as a circulating nurse. A scrub technician's job is to assist the surgeon on the sterile field; a technician is not capable of doing anything on the unsterile field. On the other hand, a circulating nurse is to remain on the unsterile field and verify and document that all surgical items have been accounted for. The circulating nurse is in charge of maintaining the correct count.

Next, McKinney and Crawford also have different disciplinary histories. Crawford had received a verbal warning and a final warning before the incidents leading to the termination, whereas McKinney had no disciplinary action during the six years she was assigned to the hospital.

Finally, McKinney did not engage in conduct of comparable seriousness. McKinney counted the sponges with Crawford during the incident in question and admitted that the count was not correct. But Crawford was responsible for and in charge of maintaining the correct count. And for Crawford, this incident occurred in addition to her repeated policy violations.

Under these circumstances, we conclude that the evidence supports the trial court's implied finding that McKinney was not similarly situated to Crawford. Crawford's second issue is resolved against her.

### III. Conclusion

Having resolved all of Crawford's issues against her, we affirm the trial court's judgment.


/Bill Whitehill/
BILL WHITEHILL
JUSTICE


180501F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

STEPHANIE D. CRAWFORD, Appellant

No. 05-18-00501-CV          V.

TEXAS HEART HOSPITAL OF THE
SOUTHWEST LLP D/B/A THE HEART
HOSPITAL OF BAYLOR PLANO,
Appellee

On Appeal from the 95th District Court,
Dallas County, Texas
Trial Court Cause No. DC-16-14418.
Opinion delivered by Justice Whitehill.
Justices Partida-Kipness and Pedersen, III
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee TEXAS HEART HOSPITAL OF THE SOUTHWEST LLP D/B/A THE HEART HOSPITAL OF BAYLOR PLANO recover its costs of this appeal from appellant STEPHANIE D. CRAWFORD.

Judgment entered July 11, 2019