# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
### NO. 03-05-00264-CV
---

**Dalia Martinez, Appellant**

**v.**

**Daughters of Charity Health Services d/b/a Seton Medical Center, Appellee**

---
**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
NO. GN204497, HONORABLE GISELA D. TRIANA, JUDGE PRESIDING**
---

### M E M O R A N D U M   O P I N I O N

Dalia Martinez appeals the district court's granting of Daughters of Charity Health Services's ("Seton's")[1] motion for a no-evidence summary judgment on Martinez's retaliation claim. *See* Tex. Lab. Code Ann. § 21.055 (West 2006) (prohibiting employer from retaliating against employee who, pursuant to Texas Commission on Human Rights Act, opposes discriminatory practices, makes or files a charge, files a complaint, or testifies, assists, or participates in investigation, proceeding, or hearing). In three issues, Martinez contends that the district court erred by (1) overruling her objection to Seton's untimely introduction of summary judgment evidence, (2) holding that her evidence failed to establish a prima facie case of retaliation, and (3) holding that she failed to demonstrate a genuine issue of material fact regarding whether she was constructively

---

[1] Daughters of Charity Health Services does business under the name Seton Medical Center. Consequently, we will refer to Daughters of Charity Health Services as Seton.

discharged by Seton. Because we hold that Martinez did not present any competent summary judgment evidence that raised a genuine issue of material fact as to whether she engaged in a protected activity, an essential element of a retaliation claim, we affirm the district court's judgment.

**BACKGROUND**

Martinez began working at Seton as an admissions counselor in 1996. In July 2001, Elizabeth Garcia-Salcedo became Martinez's direct supervisor. At that time, Martinez was working as a financial counselor. Over the next several months, Martinez complained to Robert Reed, the Director of Admissions at Seton, and to Seton's human resources department that Garcia-Salcedo and Linda Ytuarte, Garcia-Salcedo's supervisor, had created a hostile work environment, repeatedly harassed Martinez and other employees, and threatened Martinez's employment. On February 8, 2002, Martinez resigned.

In December 2002, Martinez sued Seton alleging that she was constructively discharged from her position as a financial counselor as a result of illegal retaliation by Garcia-Salcedo and Ytuarte. In her amended petition, Martinez claimed, "The direct cause of the constructive termination was the extremely hostile and, in fact, illegal employment practices engaged in by supervisors Linda Ytuarte and Elizabeth Garcia-Salcedo." During her August 26, 2003 deposition, Martinez testified that the harassment began in August 2001 and described several incidents that she considered to be "illegal" acts of harassment. The first incident involved Ytuarte calling Martinez into her office and questioning her about why she appeared "sluggish" and "lax." Martinez admitted that she had been suffering from some medical problems that caused her to walk slowly, but stated that her pain had not impaired her ability to perform at work. Martinez e-mailed

2

Reed to complain that Ytuarte was inappropriately labeling her and that she feared Ytuarte may be writing her up. Martinez also noted several occasions on which either Garcia-Salcedo or Ytuarte yelled at her, threw files at her, and reminded her that they had the authority to fire any employee at any time. Finally, Martinez testified that she was reprimanded for comforting a co-worker who had just been fired.

On December 12, 2001, Martinez e-mailed her human resources representative and the human resources site director to complain about what she described as a "major problem in the leadership of the Admissions Department at Seton Medical Center of which upper management has decided to ignore and look the other way, as long as they get the results they hope to achieve." In this e-mail Martinez also addressed a number of incidents that she characterized as "illegal employment practices," one of which occurred shortly after Thanksgiving 2001. Ytuarte had been informed that some of the employees had closed down Seton's main admissions area early on the day after Thanksgiving. Ytuarte called a meeting at which she reprimanded Martinez and other employees. Martinez considered this to be unprofessional and abusive because the employees were not given the opportunity to defend themselves. Similarly, Martinez discussed a meeting during which Garcia-Salcedo held her hand in front of an employee's face to keep them from talking during the meeting. Martinez stated that this type of humiliating behavior was commonplace.

In January 2002, Martinez became ill after an argument with Garcia-Salcedo. Martinez testified that, "When I went to [my physician], and I was sick, I was throwing up, and I was very nervous. I told her I couldn't sleep. I was crying a lot. You know, I was there with her, crying, and she told me that day, you need to quit that job. It's making you very ill, and you need to quit."

3

Martinez's doctor also informed her that she was pregnant. Shortly thereafter, Martinez resigned from Seton. Martinez testified further that she and her husband "couldn't trust that Elizabeth would stop harassing me, and we didn't want to risk that child being lost, so I quit." In addition, Martinez e-mailed several of her co-workers on her last day at Seton and stated that she was leaving because she found another job. However, Martinez also testified that Garcia-Salcedo was the sole source of stress for her at Seton and that she would not have left if Garcia-Salcedo had changed her behavior.

In April 2002, Martinez filed a complaint with the Texas Commission on Human Rights. In her complaint, she alleged:

> On or about July 2001, Linda Ytuarte and Elizabeth Garcia-Salcedo became supervisors. Immediately I began reporting instances of hostile environment and harassment which were being forced on the employees who had faithfully served Seton for decades were in turn reported to their supervisor, Robert Reed. I continued reporting the increasingly abusive treatment of employees.

Martinez's complaint also stated:

> I was subjected to hostile, retaliatory and aggressive treatment by supervisors, Elizabeth Garcia-Salcedo and Linda Ytuarte. Human Resources and management accepted and acquiesced to the discriminatory and retaliatory actions of my employer. I complained of the hostile working environment and the damages it was causing me to suffer, including mental anguish, physical damages and stress which required medical treatment. I was constructively terminated in February 2002. Similarly situated employees were not subjected to the same hostile and aggressive treatment.

On February 28, 2005, Seton filed a no-evidence motion for summary judgment. Seton insisted that Martinez had presented no evidence of any of the essential elements of a retaliation claim. On March 17, Martinez filed a response to Seton's motion to which she attached

4

excerpted portions of her August 26, 2003 deposition, a copy of her complaint filed with the Texas Commission on Human Rights, and an affidavit.[2]  In her affidavit, Martinez asserted:

> [O]n or about August 2001, Elizabeth Garcia-Salcedo, made a comment to me claiming "it was time for those people to leave Seton."  This statement was made while I was researching an account for errors and was directed to the older employees in my department.  In September of 2001, I reported to Elizabeth Garcia-Salcedo's supervisor, Robert Reed, about the comments made by Elizabeth Garcia-Salcedo, and that I felt my supervisors Elizabeth Garcia-Salcedo and Linda Ytuarte were targeting older employees with hostile treatment and harassment in order to get rid of them.  After which, my supervisors Elizabeth Garcia-Salcedo and Linda Ytuarte began harassing me.

Martinez also stated in the affidavit that "On February 7, 2002, I resigned from my job against my wishes and in compliance with my physician's advice and shortly thereafter, discovered that I had suffered a miscarriage."  Martinez argued that the attached evidence created an issue of material fact on each element of her retaliation claim.

Seton replied to Martinez's response on March 24.  Seton maintained that Martinez had failed to produce any evidence that she had engaged in a protected activity or had suffered an adverse employment action as a result.  Additionally, Seton objected to portions of Martinez's affidavit based on its contention that the affidavit contained inadmissible hearsay.[3]  That day, the district court held a hearing on the motion.  At the hearing, Seton argued that the affidavit was self-serving and could not create a genuine issue of material fact as to whether Martinez had engaged in

---

[2]  The affidavit was signed and dated on the same day that Martinez filed her response to Seton's no-evidence motion for summary judgment, March 17, 2005.

[3]  The district court overruled Seton's hearsay objections and admitted the affidavit in its entirety.

a protected activity when viewed alongside her prior deposition testimony. Without stating the basis for its decision, the district court granted Seton's motion and entered a take-nothing judgment in Seton's favor. This appeal followed.

## STANDARD OF REVIEW

We review de novo the district court's ruling on a motion for summary judgment. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). A no-evidence motion for summary judgment must be granted if, after an adequate time for discovery, (1) the moving party asserts that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial, and (2) the nonmovant fails to produce more than a scintilla of summary judgment evidence raising a genuine issue of material fact on those elements. Tex. R. Civ. P. 166a(i). In reviewing a no-evidence summary judgment, we "must examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion" to determine whether more than a scintilla of evidence was presented on the challenged elements of the nonmovant's claim. *City of Keller v. Wilson*, 168 S.W.3d 802, 825 (Tex. 2005); *see Perdue v. Patten Corp.*, 142 S.W.3d 596, 604 (Tex. App.—Austin 2004, no pet.). Because the summary judgment order does not specify the ground or grounds on which the district court relied for its ruling, we must affirm the summary judgment if any summary judgment ground is meritorious. *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005).

**DISCUSSION**

Martinez argues that the district court erred in granting Seton's no-evidence motion for summary judgment because her evidence was sufficient to satisfy her burden of establishing a prima facie case of retaliation and because issues of material fact exist with regard to whether she was constructively discharged and retaliated against for complaints she made about her supervisors.[4]

**Retaliation**

To establish a prima facie case of retaliation, Martinez must show that (1) she engaged in a protected activity, (2) an adverse employment action occurred, and (3) there was a causal connection between participation in the protected activity and the adverse employment decision. *Herbert v. City of Forest Hill*, 189 S.W.3d 369, 376 (Tex. App.—Fort Worth 2006, no pet.). Section 21.055 of the labor code states that it is "an unlawful employment practice if the employer, labor union, or employment agency retaliates or discriminates against a person who, *under this chapter*: (1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing."

---

[4] Martinez also argues that the district court erred by considering evidence attached to Seton's reply to Martinez's response to the summary judgment motion. Seton's reply was filed on the day of the hearing with excerpts of Martinez's deposition attached. The district court accepted and considered this evidence in granting Seton's summary judgment motion. We do not need to decide, however, whether the district court erred in permitting this evidence to be filed on the day of the hearing, *see* Tex. R. Civ. P. 166a(c), because Martinez waived any error on this issue. After the district court granted summary judgment, Martinez moved for reconsideration and requested leave to file additional evidence. The district court granted her leave and accepted her additional evidence, which consisted of her entire deposition, inclusive of the excerpts that had been submitted in Seton's reply. Because Martinez asked the court to admit the same evidence offered by Seton on the day of the hearing, she cannot now complain that the district court erred by considering such evidence.

7

Tex. Lab. Code Ann. § 21.055 (emphasis added).  The activities listed in section 21.055 are protected activities for the purpose of establishing a prima facie case of retaliation.  *Herbert*, 189 S.W.3d at 376-77.  Martinez must establish that, absent her protected activity, the adverse employment action would not have occurred when it did.  *Id*. at 377; *McMillon v. Texas Dep't of Ins.*, 963 S.W.2d 935, 940 (Tex. App.—Austin 1998, no pet.).  That is, Martinez must establish a "but for" causal nexus between her protected activity and Seton's prohibited conduct.  *Herbert*, 189 S.W.3d at 377; *McMillon*, 963 S.W.2d at 940.  Martinez need not establish that the protected activity was the sole cause of Seton's prohibited conduct.  *Herbert*, 189 S.W.3d at 377.  If Martinez establishes a prima facie case of retaliation, the burden shifts to Seton to articulate a non-discriminatory reason for the adverse employment action.  *McCoy v. Texas Instruments, Inc.*, 183 S.W.3d 548, 555 (Tex. App.—Dallas 2006, no pet.).

Martinez argues that her pleadings, deposition testimony, complaint to the Texas Commission on Human Rights, e-mails to Robert Reed and Seton's human resources department, and March 17, 2005 affidavit demonstrate that she engaged in a protected activity.  We disagree.

The record contains no competent summary judgment evidence establishing that Martinez engaged in a protected activity.  Martinez's complaint to the Texas Commission on Human Rights does not specifically state that she complained of any discriminatory practices.  It simply contains vague allegations that she reported an increasingly hostile workplace environment and harassment by her supervisors.  Because these reports do not relate to a practice prohibited by chapter 21 of the labor code, they are not considered protected activities under section 21.055.  *See* Tex. Lab. Code Ann. § 21.055 (prohibiting retaliation against a person who, "under this chapter,"

opposes a discriminatory practice, files a charge or complaint, or testifies, assists, or participates in any manner in an investigation, proceeding, or hearing). Likewise, Martinez's e-mails to Reed and to Seton's human resources department do not contain any allegation relating to discrimination of any kind. These e-mails contain Martinez's concerns regarding what she considered harassment and illegal actions by her supervisors. Essentially, Martinez was expressing her frustration with her supervisors' "unprofessional" behavior and their continuing affronts to her personally and to her job performance. Finally, in her August 2003 deposition, Martinez related many of the same incidents she described in her e-mails. She did not discuss any illegal discrimination nor did she state that she had ever complained to anyone at Seton about any act prohibited by chapter 21 of the labor code.

The only evidence potentially indicating that Martinez engaged in a protected activity is found in her March 2005 affidavit. In the affidavit, Martinez claims that she complained to Reed that Garcia-Salcedo and Ytuarte were targeting older employees in order to "get rid of them." Discriminating against an employee based on age is prohibited by chapter 21 of the labor code. Tex. Lab. Code Ann. § 21.051 (West 2006). Consequently, complaining about age discrimination in one's workplace is a protected activity. *See id*. § 21.055. Martinez was repeatedly asked during her deposition to explain and discuss any complaint she made or any illegal activity she witnessed or experienced during the relevant time period. She never testified about age discrimination and never mentioned that she had complained to any person at Seton that her supervisors were illegally targeting older employees. Furthermore, she affirmatively asserted that the acts she did describe during her deposition were the *only* acts that she would have characterized as illegal employment activities.

9

The statements regarding the alleged illegal age discrimination found in Martinez's affidavit contradict her earlier deposition testimony. A party cannot file an affidavit to contradict her own deposition testimony without any explanation for the change in the testimony. *See Farroux v. Denny's Rests., Inc.*, 962 S.W.2d 108, 111 (Tex. App.—Houston [1st Dist.] 1997, no pet.); *see also Goeth v. Craig, Terrill & Hale, LLP*, No. 03-03-00125-CV, 2005 Tex. App. LEXIS 2815, at *8 (Tex. App.—Austin April 14, 2005, no pet.) (mem. op.). If a party's own affidavit contradicts her earlier testimony, the affidavit must explain the reason for the change. *Farroux*, 962 S.W.2d at 111. Without such an explanation, we assume that the sole purpose of the affidavit was to avoid summary judgment. *Id.* Accordingly, we hold that Martinez's affidavit presents nothing more than a "sham" fact issue. *Id.*; *see also Goeth*, 2005 Tex. App. LEXIS 2815, at *8. Without the affidavit, there is no evidence that Martinez engaged in protected activity. Moreover, there is no evidence to support the inference that her other complaints were sufficient to place Seton on notice that she was either complaining about or opposing a discriminatory practice. *See Azubuike v. Fiesta Mart, Inc.*, 970 S.W.2d 60, 65 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (holding that employee's letters containing various complaints, but failing to mention any discriminatory act, were insufficient to place employer on notice that employee was engaging in protected activity). Consequently, Martinez failed to produce more than a scintilla of summary judgment evidence raising a genuine issue of material fact that she engaged in a protected activity. *See* Tex. R. Civ. P. 166a(i). Because Martinez was required to present some evidence that she

10

engaged in a protected activity to establish a prima facie case of retaliation, we hold that the district court did not err in granting Seton's no-evidence summary judgment.[5]

## CONCLUSION

We hold that the record contains no competent summary judgment evidence that creates a genuine issue of material fact with regard to whether Martinez engaged in a protected activity.  Therefore, we affirm the district court's judgment granting Seton's no-evidence summary judgment motion.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed:  November 30, 2006

---

[5]  Because we hold that the district court properly granted Seton's no-evidence motion for summary judgment based on Martinez's failure to raise a genuine issue of material fact on one of the essential elements of a retaliation claim, we need not address whether she was constructively terminated by Seton.