**Opinion issued November 15, 2012**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-12-00386-CV
_____

**THE UNIVERSITY OF TEXAS M.D. ANDERSON CANCER CENTER,**
**Appellant**

**V.**

**MARIA VALDIZAN-GARCIA, Appellee**

---

**On Appeal from the 133rd District Court**
**Harris County, Texas**
**Trial Court Case No. 1029251**

---

## MEMORANDUM OPINION

This is an interlocutory appeal from the trial court's denial of a motion to dismiss filed by appellant The University of Texas M.D. Anderson Cancer Center. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (Vernon 2008). We vacate the

trial court's order denying M.D. Anderson's plea to the jurisdiction and dismiss the case.

## BACKGROUND

Appellee Maria Valdizan-Garcia went to medical school in Peru and later became licensed in Texas as a registered nurse and nurse practitioner. She worked for M.D. Anderson off-and-on in various capacities from 1984 until she resigned on December 29, 2009. This lawsuit involves only her time working in the Post-Anesthesia-Care Unit (PACU). She was hired by Marian Thomas, a nursing supervisor, to work in the PACU in August 2005, and remained in that department until she left M.D. Anderson.

Valdizan-Garcia alleges that she suffered age discrimination and retaliation in the PACU until she was constructively discharged. Specifically, she contends that two supervisors—Marcela Romero and Marian Thomas—"[m]otivated by considerations of age and retaliation . . . wanted Appellee out of their recovery room." According to Valdizan-Garcia, they "terrorized her with false and pretextual accusations of deficient patient care and threats of professional licensure complaints." After she was placed on probation following five write-ups in a twelve-month period related to deficient patient care, Valdizan-Garcia was told that one more "negative incident" would result in termination of her employment

and action against her professional license. At that point, she opted for early retirement on December 31, 2009.

On March 19, 2010, following an investigation, M.D. Anderson's Nursing Peer Review Committee issued a one-page Formal Hearing Report finding that Valdizan-Garcia "did not exhibit a pattern of poor practice and therefore will not be reported to the Texas Board of Nursing." Valdizan-Garcia relies primarily on that report as evidence that the five complaints about her were groundless and a pretext for age discrimination and retaliation.

Valdizan-Garcia sued M.D. Anderson under the Health and Safety Code and the Texas Labor Code. M.D. Anderson filed a plea to the jurisdiction based on sovereign immunity. It argued that Valdizan-Garcia failed to make a prima facie case that she was constructively discharged. Alternatively, it argued that the evidence shows that the conditions that allegedly motivated her resignation were not discriminatory or retaliatory. The trial court granted M.D. Anderson's motion with regard to the Heath and Safety Code claim, but denied it as to the Labor Code claims. M.D. Anderson then brought this interlocutory appeal.

## APPLICABLE LAW

### A. Plea to the Jurisdiction

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject-matter jurisdiction. *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638

3

(Tex. 2004). The plaintiff has the burden to allege facts that affirmatively demonstrate that the trial court has subject-matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). A plea to the jurisdiction can be utilized to challenge whether the plaintiff has met his burden of alleging jurisdictional facts, but it can also raise a challenge to the existence of jurisdictional facts. *See Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004).

A trial court's review of a plea to the jurisdiction challenging the existence of jurisdictional facts mirrors that of a traditional motion for summary judgment. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012); *Miranda*, 133 S.W.3d at 228; *see* Tex. R. Civ. P. 166a(c). The government defendant is required to meet the summary judgment standard of proof for its assertion that the trial court lacks jurisdiction; once the defendant meets its burden, the plaintiff is then required to show that there is a disputed material fact regarding the jurisdictional issue. *Miranda*, 133 S.W.3d at 228. If the evidence creates a fact question regarding jurisdiction, the trial court must deny the plea to the jurisdiction and leave its resolution to the fact finder. *Id*. at 227–28. On the other hand, if the evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Garcia*, 372 S.W.3d at 635.

4

**A. Sovereign Immunity and Chapter 21 of the Labor Code**

"In a suit against a governmental employer, the [plaintiff's] prima facie case implicates both the merits of the claim and the court's jurisdiction because of the doctrine of sovereign immunity." *Id*. at 635–36. "Sovereign immunity deprives a trial court of jurisdiction over lawsuits in which the state or certain governmental units have been sued, unless the state consents to suit." *Id*. at 636.

The Legislature has provided a limited waiver of sovereign immunity for those employment discrimination and retaliation claims falling within Chapter 21 of the Texas Labor Code. *See* TEX. LAB. CODE ANN. §§ 21.051(1), 21.055 (Vernon 2006) (prohibiting unlawful employment practices by "employer"); § 21.002(8)(D) (defining "employer" to include a county, municipality, state agency, or state instrumentality). "While a plaintiff must plead the elements of her statutory cause of action—here the basic facts that make up the prima facie case—so that the court can determine whether she has sufficiently alleged a [Chapter 21] violation, [the plaintiff] will only be required to submit evidence if the defendant presents evidence negating one of those basic facts." *Garcia*, 372 S.W.3d at 637 (citing *Miranda*, 133 S.W.3d at 228).

In cases involving only circumstantial evidence of discrimination, Texas courts look to federal interpretation of analogous federal statutes because one express purpose of Chapter 21 is to "provide for the execution of the policies of

5

Title VII of the Civil Rights Act of 1964 and its subsequent amendments." TEX. LAB. CODE ANN. § 21.001(1) (Vernon 2006).  In *McDonnell Douglas Corporation v. Green* and subsequent decisions, the United States Supreme Court established an allocation of the burden of production and an order for the presentation of proof in such cases. *See Reeves v. Sanderson Plumbing Prods, Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 2106 (2000); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S. Ct. 1817, 1824–26 (1973).  Under this framework, the plaintiff must first establish a prima facie case of discrimination or retaliation.  *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 477 (Tex. 2001); *Dias v. Goodman Mfg. Co.*, 214 S.W.3d 672, 676 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).  "The precise elements of this showing will vary depending on the allegations." *Quantum*, 47 S.W.3d at 477.

Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee. *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S. Ct. 1089, 1094 (1981).  If the plaintiff is successful, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824; *Quantum*, 47 S.W.3d at 477.  "The offer of a legitimate reason eliminates the presumption of discrimination created by the plaintiff's prima facie showing." *Quantum*, 47 S.W.3d at 477.  The burden then

6

shifts back to the plaintiff to show that the employer's reason was a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 807, 93 S. Ct. at 1826–27. Although intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuading the trier-of-fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Reeves*, 530 U.S. at 143, 120 S. Ct. at 2106; *Burdine*, 450 U.S. at 253, 101 S. Ct. at 1093.

## ISSUES ON APPEAL

M.D. Anderson argues that the trial court erred in denying its plea to the jurisdiction on Valdizan-Garcia's discrimination and retaliation Labor Code claims.

## AGE DISCRIMINATION

Valdizan-Garcia argues that M.D. Anderson "wanted [her] out of their recovery room because of her age." According to Valdizan-Garcia, the trial court's denial of M.D. Anderson's plea to the jurisdiction was appropriate because "there are both allegations and evidence that age was a motivating factor in this case." Specifically, she points to her own testimony about "Romero's open preference and favoritism for younger nurses." She further argues:

> Appellee has testified to an age-oriented and cliquish atmosphere in the MDACC PACU. Essentially, the older nurses looked down on the younger nurses, viewing them as inexperienced and lazy. Members of one group would not help nurses in the other

7

group. Appellee was older, but a relatively new nurse. She did not fit with either group. As a result of the age-oriented factions in the PACU, Appellee frequently found herself without appropriate back-up when she needed help. These age-oriented behaviors left Appellee's patients at risk of harm, and exposed Appellee to more of the false and pretextual accusations of job performance deficiencies that made her continued employment at MDACC intolerable.

Additionally, Appellee testified specifically to supervisor Marcela [Romero] and supervisor Alieli Cabali treating her differently because of her age, primarily through calling her "slow." She also testified to ridicule stemming from her slowness in becoming acclimated to the PYXIS medication dispensing software, ridicule she did not see meted out to the younger nurses. Slowness has long been recognized as one of the sentinel stereotypes of illegal age discrimination in employment decisions. The prevention of discrimination based on inaccurate stereotyping of older workers is one of the decided purposes of our age discrimination statutes . . . .

Appellant's argument that Appellee has not identified similarly situated comparators does not, in any event, conclusively divest the court of jurisdiction. A dearth of direct comparator evidence is certainly no fatal blow to Appellee's case. There is more than one way to prove illegal employment discrimination. The *prima facie* case method established in *McDonnell Douglas* was never intended to be rigid, mechanized, or ritualistic.

M.D. Anderson responds that because Valdizan-Garcia has not proffered any direct evidence of age discrimination, this case is governed by the burden-shifting framework of *McDonnell Douglas*. Under this framework, M.D. Anderson asserts, Valdizan-Garcia "had the initial burden to establish a *prima facie* case of discrimination," which she did not do. Specifically, M.D. Anderson contends that Valdizan-Garcia (1) "failed to present any evidence (other than her own subjective belief) that the reason for any of her allegedly negative treatment by M.D.

8

Anderson was motivated by age discrimination or retaliation," and (2) "did not sustain her *prima facie* burden that others similarly situated were treated differently."

## A. Applicable Law

Under the Texas Commission on Human Rights Act, an employer may not discriminate against or discharge an employee based on "race, color, disability, religion, sex, national origin, or age." TEX. LAB. CODE Ann. § 21.051 (Vernon 2006). "To establish a violation of the Act, a plaintiff must show that he or she was (1) a member of the class protected by the Act, (2) qualified for his or her employment position, (3) terminated by the employer, and (4) treated less favorably than similarly situated members of the opposing class." *Autozone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (citing *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005)); *see Reeves*, 530 U.S. at 142, 120 S. Ct. at 2106 (2000). The plaintiff bears the burden of proving that age was a motivating factor in the defendant's alleged discrimination. *Wal–Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003); *Quantum*, 47 S.W.3d at 479.

## B. Analysis

Because the parties disagree about their respective pleadings and evidentiary burdens, we begin by addressing Valdizan-Garcia's argument that she does not need to identify "similarly situated comparators." According to Valdizan-Garcia,

9

"[t]here is more than one way to prove illegal employment discrimination" and the "*prima facie* case method established in *McDonnell Douglas* was never intended to be rigid, mechanized, or ritualistic." Earlier this year, the Texas Supreme Court addressed this very issue when faced with the question of how broadly to interpret the requirement that a plaintiff show he or she was "treated less favorably than similarly situated members of the opposing class" in making a prima facie case under *McDonnell Douglas*. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012). It began by clarifying that the two methods of proving age discrimination are (1) with "direct evidence of what the defendant did and said" or (2) "the burden-shifting mechanism of *McDonnell Douglas*." *Id.* The court acknowledged that "the precise elements of this [*McDonnell Douglas* prima facie] showing will vary depending on the circumstances," but further admonished that "despite the flexible nature of the prima facie case, this Court has determined it is important to give concrete guidelines on the basic facts necessary to establish a presumption of discrimination." *Id.* at 634, 640. The court explained that while the precise elements of a plaintiff's case would differ depending on whether the case involves an employee who was replaced by another worker, the prima facie case nonetheless requires "that each element . . . have a 'logical connection' to the illegal discrimination for which it establishes a legally mandatory, rebuttable

presumption." *Id.* at 641 (citing *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311–12, 116 S. Ct. 1307, 1310 (1996)).

Valdizan-Garcia does not claim that she was replaced with a younger worker, and it does not appear from the record evidence that the PACU nurse staffing lends itself to such analysis.[1] That does not mean, however, that Valdizan-Garcia need not establish a logical connection between her age and M.D. Anderson's alleged discriminatory actions to demonstrate that she was "treated less favorably than similarly situated members of the opposing class." *Autozone, Inc.*, 272 S.W.3d at 592. While Valdizan-Garcia's petition makes general references to perceived differences between how she and "significantly younger" nurses were treated, she does *not* claim that younger nurses engaged in similar patient treatment without being cited for deficient treatment, nor does she claim that she was disciplined more severely than younger nurses for similar infractions. In fact, she acknowledges in her brief that she is not relying on any comparators in claiming that she was unfairly disciplined. That is significant, because it is that discipline that she identifies as the illegal discriminatory actions leading to her alleged

---

[1] The record does reflect the following statistics about the ages of the PACU nurses as of June 4, 2010, about five months after Valdizan-Garcia retired.

| | |
|---|---|
| 20–29 | 23.89% |
| 30–39 | 30.09% |
| 40–49 | 26.55% |
| 50–59 | 16.81% |
| 60+ | 2.65% |

constructive discharge. Under *McDonnell Douglas*, she cannot establish a prima facie case of discrimination without evidence, or even an allegation, that younger nurses were disciplined differently for deficient patient care.

Valdizan-Garcia urges us to accept M.D. Anderson's nursing Peer Review Committee's ultimate decision not to report her to the state's licensing agency as evidence that "false and pretextual accusations of patient care deficiencies" were motivated by age discrimination. But the decision to not report her to the state does not mean that the patient care leading to the complaints was not deficient, nor does it mean that that she was written up for age-related reasons or that younger nurses were disciplined differently. The fact that the peer review committee found her write-ups did not warrant reporting to the licensing agency does not mean that the write-ups were frivolous or pretexual.

Valdizan-Garcia did not offer any direct evidence of age discrimination. Because she also failed to make out a prima facie case under the framework of *McDonnell Douglas*, the trial court erred in denying M.D. Anderson's plea to the jurisdiction on her age discrimination claim. *Garcia*, 372 S.W.3d at 635.

### RETALIATION

Valdizan-Garcia argues that her defense of another older nurse in the face of "Romero's withering dismissal is entitled to status as protected conduct" supports her retaliation claim. She also contends a fair inference of retaliation can be drawn

from her attempting to discuss concerns with some of the younger nurses, only to be told, "Don't make yourself a victim." She asserts that management was unreceptive to her "reporting violations involving patient safety and nurse staffing." Finally, she contends that Romero retaliated by "threatening her with false and prextual professional licensure complaints."

In response, M.D. Anderson points out that Valdizan-Garcia's allegations in her brief do not match the trial court evidence she cites. She did not argue in the trial court that she "spoke out in opposition to" age discrimination against another nurse. M.D. Anderson argues that in fact she did not engage in any protected conduct, and that she has presented nothing other than "a conclusory denial of M.D. Anderson's legitimate and reasonable response to reports involving patient safety." Absent evidence of protected conduct or a causal connection between that activity and M.D. Anderson's writing her up for legitimate patient safety incidents, M.D. Anderson argues that the trial court should have granted its plea to the jurisdiction on Valdizan-Gacia's retaliation claim.

**A. Applicable Law**

In a retaliation action brought under Section 21.055 of the Texas Labor Code, the plaintiff is required to make a prima facie showing that: (1) he or she engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action.

*Dias v. Goodman Mfg. Co.*, 214 S.W.3d 672, 676 (Tex. App.—Houston [14th Dist.] 2007, pet. denied); *Niu v. Revcor Molded Prods. Co.*, 206 S.W.3d 723, 730–31 (Tex. App.—Fort Worth 2006, no pet.). "Protected activities consist of (1) opposing a discriminatory practice; (2) making or filing a charge; (3) filing a complaint; or (4) testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing." *Dias*, 214 S.W.3d at 676; *see* TEX. LAB. CODE ANN. § 21.055 (Vernon 2006). "A plaintiff asserting a retaliation claim must establish that, in the absence of his protected activity, the employer's prohibited conduct would not have occurred when it did." *Chandler v. CSC Applied Techs., L.L.C.*, No. 01-10-00667-CV, ___ S.W.3d ___, __, 2012 WL 2924396, at *17 (Tex. App.—Houston [1st Dist.] July 12, 2012, no pet. h.) (citing *Herbert v. City of Forest Hill*, 189 S.W.3d 369, 377 (Tex. App.—Fort Worth 2006, no pet.)). "Thus, the plaintiff must establish a 'but for' causal nexus between the protected activity and the prohibited conduct." *Id.* "The plaintiff is not required to establish that the protected activity was the sole cause of the employer's prohibited conduct." *Id.*

**B. Analysis**

We agree with M.D. Anderson that there is no evidence that Valdizan-Garcia's citations for deficient patient care were related to any retaliatory motive. *See, e.g.*, *Herbert v. City of Forest Hill*, 189 S.W.3d 369, 377 (Tex. App.—Fort Worth 2006, no pet.) (plaintiff's conclusory allegations of retaliatory

14

discrimination were insufficient to support retaliation claim, especially in light of defendant's asserted legitimate reasons for employment actions). Here, Valdizan-Garcia's specific retaliation allegations are that she suffered unfounded complaints about her care of patients resulting in referral to the peer-review committee (1) "after [she] began reporting violations involving patient safety and nurse staffing," and (2) after she stood up for another nurse who was allegedly discriminated against because of her age.

M.D. Anderson provided detailed evidence and documentation about the patient-care incidents that led up to Valdizan-Garcia's being placed on "Final Notice" and her referral to the peer-review committee. In other words, M.D. Anderson met its burden to demonstrate a non-retaliatory reason for its disciplining Valdizan-Garcia. In response, Valdizan-Garcia does not dispute the factual basis of the hospital's write-ups (i.e., that she provided deficient patient care), nor does she provide any evidence that she would not have been cited on these occasions but for her alleged complaints about patient care and staffing and the treatment of another nurse in an age-protected class. Instead, she argues that there is a "relaxed deterrence standard of causation in retaliation, as contrasted to the 'but for' causation test in disparate treatment discrimination claims."

The relaxed causation standard advocated by Valdizan-Garcia is not supported by Texas law. Our precedent requires a plaintiff claiming retaliation to

15

demonstrate he or she would not have suffered an adverse employment action but-for the exercise of a protected activity. *E.g., Chandler*, __ S.W.3d at __, 2012 WL 2924396, at \*17. She has not done so. A plaintiff's subjective beliefs of retaliation alone are not evidence of causation. *Id.* at \*16. Even if Valdizan-Garcia's vague references to complaints made to PACU management about patient safety or treatment of another nurse amounted to protected activity, the trial court should have granted M.D. Anderson's plea to the jurisdiction on Valdizan-Garcia's retaliation claim because Valdizan-Garcia has not alleged, or provided evidence, that these complaints were the cause of her write-ups for deficient patient care.

## CONCLUSION

We vacate the trial court's judgment denying M.D. Anderson's plea to the jurisdiction and dismiss the case. *See* Tex. R. App. P. 43.2(e).

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

16